UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SMITH,

        Plaintiff,                         Case No.  1:14-cv-984

v.

                                            HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY

        Defendant,
_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff James Smith seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide

questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 43 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 29, 32). He completed high school and previously worked as a construction laborer, material handler, and inspector. (Tr. 390–92). Plaintiff applied for benefits on June 6, 2011, alleging that he had been disabled since December 17, 2010, due to lumbar problems, HIV, L4-L5 bulging

disc, learning disability, reading problems, writing problems, bi-polar disorder, and ADHD. (Tr. 32, 116–19). Plaintiff's application was denied on October 4, 2011, after which time he requested a hearing before an ALJ. (Tr. 91–94). On December 4, 2012, Plaintiff appeared with his counsel before ALJ James Prothro with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 372–430). In a written decision dated September 13, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 17–30). The Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 4–7). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 415.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the durations requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Prothro determined Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, December 17, 2010. (Tr. 22).  At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) lumbar spine degenerative disc disease; (2) right leg pain and weakness; (3) HIV; (4) mood disorder; (5) anxiety disorder; and (6) ADHD. (Tr. 22).  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 23–24).  At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: he requires a sit/stand option in the workplace and is limited to simple, repetitive tasks, and no fast-paced work or production quotas.

(Tr. 24). The ALJ next determined that Plaintiff was not able to perform any of his past relevant work. (Tr. 29).

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which plaintiff could perform given his limitations.  *See*

*Richardson*, 735 F.2d at 964. Using the VE testimony, the ALJ concluded that there existed approximately 9,000 national jobs which an individual similar to Plaintiff could perform. This included work as a surveillance system monitor. (Tr. 30). This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

**DISCUSSION**

Plaintiff presents the following statement of error: "The ALJ's Residual Functional Capacity (RFC) and credibility determination does not comply with Social Security rules and regulations."(Dkt. #12, PageID 31). Under that heading, Plaintiff's argument section raises a variety of related claims. The Court will discuss them below.

    **A.**    **The ALJ Engaged in "Cherry–Picking."**

Plaintiff accuses the ALJ of bias and "cherry-picking" the portions of the record that were unfavorable to his claim for benefits. (Dkt. #12, PageID 34). The argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court finds that the ALJ's decision provides an accurate summary of the administrative record, and rejects Plaintiff's claim.

### B.     The RFC Failed to Include Certain Severe Impairments.

Plaintiff next claims that the ALJ did not include "in his RFC determination his own previous conclusion that [Plaintiff] suffers from the severe impairments of an anxiety disorder, a mood disorder, and ADHD." (Dkt. #12, PageID 34–35).  This conclusion, however, lacks any accompanying analysis or discussion of case law. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see also Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014).

Even assuming that Plaintiff did not waive this issue, it is meritless. Plaintiff argues that the Commissioner's decision must be overturned because anxiety disorder, mood disorder, and ADHD were included in the list of his severe impairments, but the ALJ's RFC finding did not include functional limitations based on those impairments.  Plaintiff's argument improperly collapses multiple steps of the sequential analysis.  The ALJ found at step 2 of the sequential analysis that Plaintiff had severe impairments. (Tr. 22). The Sixth Circuit considers the step two severity regulation as a "de minimis hurdle" intended to "screen out totally meritless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (*quoting Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007) and *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)).  The ALJ is not bound later, at step 4, to find that impairments exist based on his step 2 finding.  *Corley v. Comm'r of Soc. Sec.*, No. 98–3785, 1999 WL 970306, at * 1 (6th Cir.  Oct.13, 1999) ("The ALJ did not err in finding that a severe impairment can exist without finding that a significant limitation and disability exist.").  "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the

other." *Griffeth v. Comm'r of Soc. Sec*, 217 F. App'x 425, 429 (6th Cir. 2007) (citation and internal quotation omitted).

RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1); *Griffeth*, 217 F. App'x at 429. The administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis and it is applied at steps 4 and 5. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. We use the residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found that Plaintiff retained the RFC for sedentary work. (Tr. 24–25). The ALJ also carefully considered the evidence related to Plaintiff's mental impairments. (Tr. 27–29). Plaintiff has not shown that there are restrictions that the RFC failed to adequately take into account which stem from the aforementioned impairments.

### C. The RFC Failed to Include Limitations in Concentration, Persistence, and Pace.

Similar to the above discussion, Plaintiff next contends that the ALJ erred because although he determined at step 3 that Plaintiff had "moderate" limitations in maintaining concentration, persistence or pace, the ALJ did not include those limitations in the RFC. Plaintiff specifically argues that while the RFC may have accounted for Plaintiff's limitations in persistence or pace, it did not account for Plaintiff's limitations in his concentration. (Dkt. #12, PageID 35). Like the claim raised above, however, Plaintiff conflates the analysis conducted at separate points of the ALJ's decision.

At step 3 in the sequential analysis, the ALJ considered whether Plaintiff met or medically equated the criteria of Listings 12.02, 12.04, and 12.06 of the Listing of Impairments. To

meet the criteria of these listings, a plaintiff must demonstrate, among other things, that he or she satisfies the requirements of Paragraph B of the listings, a portion of which requires a plaintiff to demonstrate marked difficulties in maintaining concentration, persistence, or pace. (*See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.02).  Here, Plaintiff is attempting to take a portion of the ALJ's step 3 finding out of context and substitute it for the ALJ's factual finding at step 4.  It is well established, however, that the paragraph B criteria used in determining whether a claimant meets or equals a listed impairment "are not an RFC assessment."  *See* SSR 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at * 4 (July 2, 1996). RFC is a more detailed assessment made by "itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listing of Impairments." *Id.* at *4; *see also Collier v. Comm'r of Soc. Sec.*, No. 1:11–cv–1144, 2013 WL 4539631, at *5–6 (W.D. Mich. Aug. 27, 2013). The ALJ's findings at earlier steps in the sequential analysis do not undermine his RFC determination. *See Pinkard v. Comm'r of Soc. Sec.*, No. 1:13–cv–1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (making a similar analysis).  Accordingly, the ALJ was not required to account for his findings at step 3 in his step 4 analysis, and Plaintiff has shown no error.

### D.     The RFC Failed to Include Limitations Found by Dr. Tareen.

Plaintiff next claims that the RFC is not supported by substantial evidence because although the ALJ gave "great weight" to the opinion of Dr. Tareen, a state reviewing psychologist, he failed to specifically include Dr. Tareen's opinion that Plaintiff would be "moderately limited" in "[t]he ability to complete a normal workday and workweek without interruptions from

8

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 41; Dkt. #12, PageID 35–36).

On October 3, 2011, Dr. Tareen reviewed Plaintiff's record and completed an assessment regarding Plaintiff's mental RFC. The assessment asked Dr. Tareen to rate the Plaintiff regarding certain limitations. After noting that Plaintiff was "moderately limited" in the aforementioned ability, Dr. Tareen was asked to explain the limitation she noted. Dr. Tareen wrote that "[t]he claimant seems capable of maintaining basic attention, concentration and pace for simple tasks, but would have difficulty with detailed, complex and sequential tasks. The ability to sustain concentration and pace while performing such tasks will be moderately affected. The claimant may have moderate difficulties to complete a normal workweek secondary to psychologically based symptoms." (Tr. 41–42). Dr. Tareen further concluded "There is no objective data to support the presence of any mental disorder affecting the cognitive abilities markedly at present, which can preclude [claimant] from performing [simple, repetitive task] work related activities on [a] sustained level." (Tr. 42). The ALJ included these limitations in the RFC by limiting Plaintiff to simple work and restricted him from fast-paced work and production quotas. Plaintiff has not shown how Dr. Tareen's opinion is inconsistent with the RFC.

Moreover, "an ALJ is not required to adopt verbatim the opinion of a physician or psychologist." *Woods v. Astrue*, No. 4:11-CV-2306, 2012 WL 5415327, at \*13 (N.D. Ohio Oct. 5, 2012) *report and recommendation adopted*, No. 4:11 CV 2306, 2012 WL 5457475 (N.D. Ohio Nov. 5, 2012). "The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). That is what the ALJ has done in this case, and the Plaintiff has shown no error.

### E. The RFC Failed to Include Plaintiff's Use of a Cane.

Plaintiff next claims that the RFC is deficient because it did not account for Plaintiff's use of a cane. (Dkt. #12, PageID 36). At the administrative hearing, Plaintiff stated that he used a cane roughly fifty percent of the time. (Tr. 394). On September 30, 2011, Dr. Saadat Abbasi, a state examiner, completed a physical RFC assessment and noted, among other things, that Plaintiff required a hand-held assistive device (or a cane) to assist ambulation. (Tr. 39). The ALJ rejected this portion of the doctor's assessment, noting that "the clinical record, though containing references to the claimant's use of a cane, does not consistently document this, nor does it show a cane was prescribed by any physician." (Tr. 28). A review of the record shows that while some examiners noted Plaintiff used a cane, none of the examiners actually prescribed a cane. (Tr. 202). As a non-examining source, the ALJ was only required to consider the opinion of Dr. Abbasi. 20 C.F.R. § 416.927(e). This the ALJ did, and his reasons for rejecting Dr. Abbasi's opinion that Plaintiff required the use of a cane is supported by substantial evidence. Accordingly, Plaintiff's claim fails.

### F. The ALJ's Conclusion That a Significant Number of Jobs Exist That Plaintiff Could Perform is Not Supported by Substantial Evidence.

Plaintiff next claims that the ALJ's conclusion at step 5 that there exist a significant number of jobs Plaintiff could perform is not supported by substantial evidence. (Dkt. #12, PageID 38–39). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Parley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Social Security Rulings also direct an ALJ to seek out the testimony of a VE where, as here, a claimant's RFC requires a sit/stand option. SSR 83-12,

Titles II & XVI: Capability to Do Other Work-Themedical-Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range of Work or Between Ranges of Work, 1983 WL 31253 at *4 (1983); *see also  Sharp v. Barnhart*, 152 F. App'x 503, 506–07 (6th Cir. 2005).  That is what the ALJ purported to do in this case, however after a review of the relevant portion of the transcript, the Court concludes the ALJ's finding is unsupported by substantial evidence.

At the administrative hearing, ALJ Prothro posed several different hypotheticals to the VE.  The ALJ started by posing the following:

> Q. This hypothetical person would be able to do the following. Would be able to lift and carry maximum of 10 pounds. Standing and walking would be limited to two out of eight hours in a day, and sitting for six out of eight.  He is required to change positions about every two hours, but can do this using the regular breaks during the day; that would be the lunch brake (sic) and the other breaks that are customarily given; with no climbing of ladders, ropes, or scaffolds.  Can occasionally climb ramps or stairs.  Can occasionally balance, stoop, kneel, crouch, and crawl.

(Tr. 419).  The VE responded that Plaintiff would be unable to do any of his past relevant work. (Tr. 419).  The VE went on to note, however, that under that hypothetical, a person similar to Plaintiff could perform the duties of a callout operator (600 jobs in the State of Michigan and 50,000 in the national economy), surveillance systems monitor (370 jobs in the State of Michigan and 9,000 jobs in the national economy), and bench hand (12,000 jobs in the State of Michigan and 200,000 jobs nationally). (Tr. 419–20).

After posing two related hypotheticals to the VE, the ALJ next presented a fourth hypothetical which he stated was a "new scenario." (Tr. 423). In this hypothetical, the claimant would be able to lift a maximum of 10 pounds, required a sit/stand option in the workplace, and would be limited to simple, repetitive tasks with no fast-paced work or production quotas. (Tr. 423).

This was the hypothetical ultimately adopted as the Plaintiff's RFC. (Tr. 24). The VE responded to the hypothetical by stating that:

> A. I don't know–I'm not hearing the hypothetical as being different [than] hypothetical No. 1, your honor, unless I'm misunderstanding you. You're adding a sit/stand option, which actually is not defined in the Dictionary of Occupational Titles; that would be considered an accommodation probably, with regard to work. So the surveillance system monitor that I used earlier could potentially be performed with a sit/stand opinion, although the DOT does not indicate that a sit/stand option exists.

(Tr. 424). In response to further questioning by the ALJ, however, the VE noted "I believe that a sit/stand option would certainly be available, but I think it would be dependent on the work environment . . . And so, in order to fully–to give you a complete answer, I think we would have to be able to know what kind of work environment we were talking about." (Tr. 425). The ALJ did not further discuss the issue with the VE.

The Court finds the VE's answers in response to the ALJ to be nebulous at best. The VE never definitively said that Plaintiff could perform the position of surveillance system monitor under the last hypothetical. This point is bolstered the VE's later statement that more information is needed to give an answer. Accordingly, the Court is unable to say the ALJ's step 5 determination is supported by substantial evidence. The matter will therefore be remanded under sentence four of § 405(g). On remand, the Commissioner should reevaluate whether a significant number of jobs exist which Plaintiff could perform.

### G. The ALJ Erred in Discounting Plaintiff's Credibility.

At the administrative hearing, and on his function report, Plaintiff argued that he was impaired to an extent far greater than that recognized by the ALJ. Specifically, he stated that he was distracted to the point where he was unable to watch a half-hour TV program. (Tr. 403). Plaintiff

also stated that, on average, he placed his back pain at 7.5 on a scale of 1-10, and that when someone shook his hand, it felt like his arm was being torn off. (Tr. 404, 410). He further noted that he was unable to carry anything over 7 pounds. (Tr. 134). Plaintiff argues that he is entitled to relief because the ALJ's rationale for discounting his testimony is not supported by substantial evidence.

   An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (*quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact ... [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).

   In support of his decision to discount Plaintiff's subjective allegations, the ALJ noted that the record did not support the Plaintiff's assertions. Specifically, the ALJ noted that despite plaintiff's statements he could only walk short distances. Plaintiff engaged in a wide variety of daily

activities. (Tr. 25). This included shopping at the grocery store, going to the mall, and going to church. (Tr. 136–37). In March 2012, a treatment note by Brian Powell, DO, noted no back pain and joint swelling. Plaintiff had normal range of motion, strength, and stabilities in all his extremities with no pain on inspection. (Tr. 275-77). At an examination in February he appeared well tanned for the time of year. (Tr. 218). Despite his reports of extreme pain, Plaintiff did not want an injection for pain relief. (Tr. 203). In short, the ALJ's conclusion is supported by substantial evidence.

Plaintiff further argues that the ALJ failed to "properly consider the factors set forth in 20 C.F.R. § 404.1529(c)(3). As the CFR and associated Social Security Rulings direct, in addition to the objective evidence, the ALJ is to consider the following factors when assessing the credibility of a claimant's statements regarding his symptoms:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See SSR 96–7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 at *3 (1996). Under SSR 96–7p the ALJ is required to "consider" the seven-listed factors, but there is no requirement that the ALJ discuss every factor. *See White*, 572 F.3d at 287; *see also Coleman v. Astrue*, No. 2:09–cv–36, 2010 WL 4094299, at *15 (M.D. Tenn. Oct.18, 2010) ("There is no requirement [ ] that the ALJ expressly discuss each listed factor."); *Roberts v. Astrue*, No. 1:09–cv–1518, 2010 WL 2342492, at * 11 (N.D. Ohio June 9, 2010) ("[T]he ALJ need not analyze all seven factors contained in SSR 96–7p to comply with the regulations."). SSR 96–7p sets forth a list of factors for the ALJ to consider in addressing the claimant's credibility. *See White*, 572 F.3d at 287; *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011); *Parsons v. Astrue*, No. 1:09–cv–2695, 2011 WL 887618, at * 6 (N.D. Ohio Feb.17, 2011) ("The ALJ conducted the appropriate analysis pursuant to SSR 96–7p, although not articulated in the manner Plaintiff would prefer."). The ALJ's discussion of plaintiff's credibility began with the relevant regulations and social security rulings, including SSR 96–7p. (Tr. 25). The ALJ's reference to SSR 96–7p indicates that he "considered" all the ruling's factors. *Brown v. Comm'r of Soc. Sec.*, No. 1:10–cv–705, 2012 WL 951556, at * 5 (W.D. Mich. Feb 27, 2012).

While the ALJ was not required to explicitly discuss each of the above mentioned factors, it is clear that he did discuss many of them. For example the ALJ mentioned the Plaintiff's daily activities of shopping, driving a car, using the internet, and handling financial matters. (Tr. 25). He also considered the Plaintiff's allegations of pain and the treatment he had received. (Tr. 25–26). This included Plaintiff's decision not to receive injections. (Tr. 26). Plaintiff puts great emphasis on the ALJ's failure to discuss the side effects that Plaintiff experienced from his medications,

mentioning that Plaintiff testified that he would often soil himself. (Dkt. #12, PageID 37–38). While Plaintiff did testify at the hearing that he experienced the sudden need to use the restroom and sometimes soiled himself, this was not directly connected to his medications. (Tr. 400–02). The record shows Plaintiff sought treatment for this condition only once (Tr. 291), and at several other appointments did not complain of similar symptoms. (Tr. 196, 226, 275). Dr. Karen Kennedy treated Plaintiff for this complaint. The record shows Dr. Kennedy was aware of Plaintiff's HIV status and knew Plaintiff was taking the medications he alleges lead to his side effects. (Tr. 291, 294). However, the treatment notes demonstrate that Dr. Kennedy believed Plaintiff's condition was connected to his depression, and in the treatment plan noted only that Plaintiff should follow up with a mental health clinic. (Tr. 293).

Plaintiff presents new evidence in his brief that alleges a side effect of Plaintiff's medications include diarrhea. When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Under sentence-six, "[t]he court ... may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the

administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). Plaintiff has failed to show good cause for failing to incorporate this evidence into the record. Moreover, Plaintiff has failed to show how this evidence is material. Evidence is deemed "material" if "there is a probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with new evidence." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Plaintiff is arguing the ALJ should have explicitly discussed Plaintiff's medication side effects in evaluating Plaintiff's credibility, but as noted above, there is no requirement that the ALJ must do so, and the record shows the ALJ adequately considered the relevant factors. Accordingly, Plaintiff cannot show how this evidence, if presented before the ALJ, would have led to a different outcome. Plaintiff's claim therefore fails.

Finally, the Court notes that Plaintiff may have raised other cryptic arguments in his brief. The Court deems these other arguments as waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.").

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **REVERSED** and **REMANDED**. A separate judgment shall issue.

Dated:  November 26, 2015                        /s/ Janet T. Neff
                                                 JANET T. NEFF
                                                 United States District Judge